## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| JAMAL L. THOMPSON BULLOCK, | CASE NO. 5:24-CV-01379-BMB |
| Petitioner, | JUDGE BRIDGET M. BRENNAN |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| WARDEN ANGELA STUFF,[1] | **REPORT AND RECOMMENDATION** |
| Respondent. | |

### INTRODUCTION

Representing himself, Petitioner Jamal L. Thompson Bullock, a prisoner in state custody, seeks a writ of habeas corpus under 28 U.S.C. § 2254. (ECF #1). The District Court has jurisdiction under § 2254(a) and this matter is referred to me to prepare a Report and Recommendation. (Non-document entry of Aug. 14, 2024). Respondent Warden Angela Stuff, as Warden of the Richland Correctional Institution (hereinafter, the State), filed the Answer and Return of Writ, including the state court record. (ECF #4 & 4-1). Mr. Bullock then filed the Traverse to the Return of Writ. (ECF #7).

---

[1] After Mr. Bullock filed his petition, Angela Stuff replaced Kenneth Black as Warden of the Richland Correctional Institution. Under Fed. R. Civ. P. 25(d) and Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts, I automatically substitute Warden Stuff as the proper respondent.

PROCEDURAL HISTORY

**A.     Trial court proceedings**

On March 24, 2022, a Stark County Grand Jury indicted Mr. Bullock for aggravated murder, aggravated robbery, and aggravated burglary. (ECF #4-1 at PageID 50-51). At arraignment, Mr. Bullock pled not guilty to all charges and received appointed counsel. (*Id.* at PageID 178).

On October 18, 2022, the trial court permitted the State to amend the charge for aggravated murder to involuntary manslaughter. (*Id.* at PageID 53-54). Mr. Bullock and the State then entered into a negotiated agreement where Mr. Bullock would plead guilty to involuntary manslaughter, aggravated robbery, and aggravated burglary as charged in the amended indictment. (*Id.* at PageID 56, 63). The trial court accepted Mr. Bullock's guilty plea and sentenced him to an aggregate prison term of 20 to 25 years consistent with the plea agreement. (*Id.* at PageID 58, 66). The parties agreed that for purposes of sentencing Count Two merged with Count One. (*Id.* at PageID 206). Pertinent to Mr. Bullock's habeas claim, the trial court did not advise Mr. Bullock of any appellate rights. (*Id.* at PageID 55-70, 188-210).

**B.     Post-sentence motion to withdraw the guilty plea**

On July 25, 2023, Mr. Bullock moved to withdraw his guilty plea. (ECF #4-1 at PageID 72-75). The trial court overruled the motion. (*Id.* at PageID 76-77).

**C.     Motion for leave to file a delayed appeal**

The deadline for Mr. Bullock to file for direct appeal of the judgment expired November 18, 2022. *See* App. R. 4(A)(1) (allowing 30 days from the date of judgment to file a direct appeal). Nearly a year later, on November 3, 2023, Mr. Bullock moved for leave to file a delayed appeal under Appellate Rule 5(A) in the Ohio Court of Appeals, Fifth Appellate District. (ECF #4-1 at

2

PageID 78, 88-95). Under that rule, the appellate court has discretion to allow the defendant to pursue an otherwise untimely direct appeal if he states the reason for failing to appeal within the 30-day deadline. App. R. 5(A)(2). To justify the lengthy delay, Mr. Bullock stated he was not aware he could file an appeal because the trial court did not advise him of any appellate rights. (*Id.* at PageID 92). The Fifth District determined this was not a sufficient reason to justify the delay and so denied the motion. (*Id.* at PageID 145).

Mr. Bullock appealed to the Supreme Court of Ohio, raising two propositions of law:

**Proposition of Law I**: Appellant received ineffective assistance of counsel when trial counsel failed to advise him of his appellate right and failed to consult with him about any non-frivolous claims in violation of the Sixth Amendment under the United States Constitution.

**Proposition of Law II**: The Fifth District Court of Appeals abused its discretion denying appellant's motion for leave to file a delayed appeal when the untimely filing was based on the trial court's failure to advise him of his right to appeal in violation of the due process and equal protection clauses of the Fourteenth Amendment of the United States Constitution.

(*Id.* at PageID 147-61) (cleaned up). The Supreme Court of Ohio declined to hear his appeal. (*Id.* at PageID 176).

### FEDERAL HABEAS REVIEW

Mr. Bullock asserts one ground for relief:

Petitioner was denied due process and equal protection of the law when the Fifth District Court of Appeals denied his motion for leave to file a delayed appeal based on the trial court's failure to advise him of his right to appeal.

(ECF #1 at PageID 16-20).[2] Mr. Bullock requests the court grant his immediate release, reduce his sentence, and order the State to allow him to appeal with counsel. (*Id.* at PageID 15).

---

[2]     Mr. Bullock's petition also included an ineffective assistance of counsel claim based on trial counsel's failure to inform him of his limited appellate rights. As outlined in a prior order

STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs Mr. Bullock's habeas petition. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA recognizes that "[s]tate courts are adequate forums for the vindication of federal rights" so AEDPA acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citation and quotation omitted).

Accordingly, habeas relief cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

For the purposes of § 2254(d)(1), "clearly established Federal law" means "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its

---

(ECF #8), Mr. Bullock did not raise this claim in his motion for leave to file a delayed appeal before the Fifth District but raised it for the first time in his appeal to the Supreme Court of Ohio. (*Contrast* ECF #4-1 at PageID 88-95 (raising a single claim in the appellate court that the trial court failed to advise Mr. Bullock of his limited appellate rights and to appoint counsel for an appeal), *with id.* at PageID 149-60 (raising claims that trial counsel and trial court failed to inform him of his limited appellate rights on appeal to the Supreme Court of Ohio)). Because a federal district court may not grant a writ of habeas corpus for a petition containing exhausted and unexhausted claims, Mr. Bullock had the option to delete his unexhausted ineffective assistance claim or apply for a stay and abeyance to return to the state courts to exhaust that claim. (ECF #8 at PageID 261-62). Mr. Bullock disagreed with my conclusion on exhaustion but chose to delete the claim to pursue the exhausted claim presented here. (ECF #9).

decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes "the holdings, as opposed to dicta, of [Supreme Court] decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

Habeas courts review the last-explained state-court judgment on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991). A state court's decision is "contrary" to Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has decided on a set of materially indistinguishable facts. *Id.* at 405. The word "contrary" means "diametrically different, opposite in character or nature, or mutually opposed." *Id.* A state court does not act contrary to Supreme Court precedent when the precedent of the Supreme Court is ambiguous or nonexistent. *See Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state court's decision involves an "unreasonable application" of Supreme Court precedent if (1) the state court identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the state prisoner's case or (2) the state court either unreasonably extends a legal principle from the Supreme Court's precedent to a new context where it should not be applied or unreasonably refuses to extend that principle in a new context where it should apply. *Williams*, 529 U.S. at 407. A state-court decision must be "objectively unreasonable" to have unreasonably applied Supreme Court precedent which requires more than the decision being "erroneous" or "incorrect." *See id.* at 409-11. "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Under § 2254(d)(2), a state court's factual determinations stand unless they too are objectively unreasonable considering the evidence presented in state court. *See Harrington*,

5

562 U.S. at 100. The Supreme Court has repeatedly emphasized "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion." *Burt*, 571 U.S. at 18. Under AEDPA, "a determination of a factual issue made by a state court shall be presumed to be correct" unless the petitioner offers clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2554(e)(1).

The principles of comity, that is the deference and mutual respect shown for the laws and judicial decisions of another jurisdiction, constrain a federal district court's review of state court decisions. Those principles require federal courts to defer to a state court's judgment on issues of state substantive and procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-29 (1982).

The standard is intended to be difficult to meet and reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Harrington*, 562 U.S. at 102-03; *see also Brown v. Davenport*, 596 U.S. 118, 133 (2022) (describing habeas as an "extraordinary remedy, reserved for only extreme malfunctions in the state criminal justice system and different in kind from providing relief on direct appeal") (cleaned up). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

## DISCUSSION

There is no dispute about the facts that inform Mr. Bullock's claim. In a combined change-of-plea and sentencing hearing, the parties outlined for the trial court the negotiated plea and the

6

jointly recommended sentence of 20 to 25 years. (ECF at #4-1 PageID 190). Mr. Bullock pled

guilty to involuntary manslaughter, aggravated robbery, and aggravated burglary. (*Id.* at PageID

55-62, 196-200). The parties agreed that for purposes of sentencing, aggravated robbery merged

with involuntary manslaughter. (*Id.* at PageID 206). The court merged those counts and sentenced

Mr. Bullock to 10 to 15 years for involuntary manslaughter and 10 years for aggravated burglary, to

be served consecutively for an aggregate sentence of 20 to 25 years. (*Id.* at PageID 57-58). The court

did not inform Mr. Bullock of any right to appeal.

In seeking a delayed appeal, Mr. Bullock stated he did not file a timely appeal because the

trial court did not notify him of his appellate rights, including the 30-day time limit to file an

appeal and the right to appellate counsel, and argued the trial court's failure to advise him violated

his due process right to appeal. (*Id.* at PageID 93-94) (citing federal district court and Supreme

Court case law). On appeal to the Supreme Court of Ohio, Mr. Bullock argued the Fifth District's

decision was an abuse of discretion and a denial of due process and equal protection because the

trial court kept him ignorant of his right to appeal. (*Id.* at PageID 159) (citing federal district court

and Sixth Circuit case law).

Mr. Bullock raises the same claim in his habeas petition, arguing that the Fifth District's

denial of leave to appeal violated his right to due process and equal protection and was an

unreasonable application of Supreme Court precedent. (ECF #7 at PageID 246, 248) (citing

*Peguero v. United States*, 526 U.S. 23 (1999), *Jacobs v. Mohr*, 265 F.3d 407 (6th Cir. 2001), and *Wolfe

v. Randle,* 267 F.Supp.2d 743 (S.D. Ohio 2003)). The State concedes the petition appears to be

timely under 28 U.S.C. § 2244(d), but argues the claim is not reviewable on federal habeas relief

because (1) there is no constitutional requirement that a trial court must inform a criminal

defendant of the right to appeal when the defendant pled guilty and received a jointly

recommended sentence, and (2) it involves the application of a state procedural rule. (ECF #4 at

PageID 33-36). Alternatively, the State argues the claim is procedurally defaulted because Mr.

Bullock did not file a direct appeal, and the Fifth District denied his motion for leave to file a

delayed appeal. (*Id.* at PageID 41-45).

## I. Procedural Barriers to Federal Habeas Review

Before a federal court may review the merits of a petitioner's habeas claim, the petitioner

must overcome certain procedural barriers. These barriers, including exhaustion of available state

remedies and procedural default, limit a petitioner's access to review on the merits of a

constitutional claim. *Daniels v. United States*, 532 U.S. 374, 381 (2001). Put simply, federal courts

may review federal constitutional claims that were evaluated on the merits by a state court. Claims

there were not evaluated on the merits, either because they were never presented to the state courts

(*i.e.*, they are unexhausted) or because they were not properly presented to the state courts (*i.e.*,

they are procedurally defaulted), are generally not cognizable on federal habeas review. *Bonnell v.*

*Mitchel*, 301 F.Supp.2d 698, 722 (N.D. Ohio Feb. 4, 2004).

A court may not grant a petition for habeas corpus unless it appears the petitioner has

exhausted available state court remedies, the state corrective process is unavailable, or

circumstances exist rendering such state process ineffective to protect the petitioner's rights.

28 U.S.C. § 2254(b)(1). Typically, the exhaustion requirement is satisfied when the petitioner

fairly presents all claims to the highest court in the state where petitioner was convicted, giving the

state a full and fair opportunity to rule on the petitioner's claims. *O'Sullivan v. Boerckel*, 526 U.S.

838, 842 (1999). A claim is fairly presented when both the factual and legal basis for the claim has

been introduced to the state courts. *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2000). A failure to exhaust applies only where state remedies remain "available at the time of the federal petition." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). In contrast, where state court remedies are no longer available, procedural default, rather than exhaustion, applies. *Id.*

There are two avenues by which a petitioner's claim may be procedurally defaulted. *Williams*, 460 F.3d at 806. First, procedural default occurs if a petitioner fails to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). To determine whether a petitioner's failure to comply with state procedural rules bars review of his habeas claims, courts in the Sixth Circuit perform a four-pronged analysis: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *Maupin*, 785 F.2d at 138.

Second, a claim may be procedurally defaulted when the petitioner fails to raise it in state court and pursue it through the state's "ordinary appellate review procedures." *Williams*, 460 F.3d at 806, citing *O'Sullivan*, 526 U.S. at 848 (1991); *see also Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). As addressed above, "[i]f, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Williams*, 460 F.3d at 806. Although the exhaustion requirement is

satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to present his federal claims for state court review constitutes a procedural default of those claims, barring federal court review. *Williams*, 460 F.3d at 806; *Shinn v. Ramirez*, 596 U.S. 366, 371 (2022) (holding a claim is procedurally defaulted on federal habeas review where a state prisoner has failed to first present a federal claim to the state court in accordance with state procedures and the state court would dismiss the claim on that basis).

Absent a petitioner demonstrating either cause and prejudice or that failure to review the claim would result in a fundamental miscarriage of justice (discussed below), a federal court will not consider the merits of procedurally defaulted claims. *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).

### A. Mr. Bullock's claim is procedurally defaulted under *Maupin*.

Generally, Ohio law requires a defendant file a notice of appeal within 30 days of the challenged judgment entry to perfect a direct appeal. App. R. 4. If the defendant misses the deadline to file, he may seek leave to file a delayed appeal under Appellate Rule 5. For the appellate court to grant the motion (thereby allowing the defendant to proceed as if on direct appeal), the defendant must demonstrate cause for both the delay itself and the length of delay. *Stone v. Moore*, 644 F.3d 342, 346 (6th Cir. 2011) (citing Ohio law).

The Fifth District denied Mr. Bullock's motion under Appellate Rule 5, stating:

This matter comes before the Court upon Appellant's "Motion for Leave to File Delayed Appeal." Appellant seeks to appeal the trial court's entry dated October 18, 2022. Appellant avers he did not timely file a notice of appeal because he was not advised of the right to appeal and did not know he could file an appeal.

The Supreme Court has held, if a movant establishes sufficient reasons justifying the delay, the appellate court may, in its discretion, grant the motion, and the case proceeds as it would have if timely filed.

Upon consideration, Appellant's motion is denied.

(ECF #4-1 at PageID 145) (citation omitted). Mr. Bullock's claim is procedurally defaulted under *Maupin*. A petitioner's failure to justify the reason for and length of the delay under Appellate Rule 5 is an adequate and independent ground on which the state can rely to foreclose review of a federal constitutional claim. *Stone,* 644 F.3d at 346. This satisfies the first, second, and third prongs of the *Maupin* analysis. Once a court determines the defendant did not comply with a state procedural rule and the rule is an adequate and independent state ground, the petitioner must show there was cause for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Maupin*, 785 F.3d at 138.

## B.    Mr. Bullock might establish cause to excuse the procedural default.

To overcome a procedural bar, the petitioner must show cause for the default and actual prejudice resulting from the alleged violation of federal law.[3] *Coleman*, 501 U.S. at 749. A petitioner cannot rely on conclusory assertions of cause and prejudice to overcome procedural

---

[3]    Alternatively, a petitioner may also overcome procedural default by showing that a fundamental miscarriage of justice will occur if the claims are not considered. *Coleman*, 501 U.S. at 750; *Murray*, 477 U.S. at 495. A fundamental miscarriage of justice occurs in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 495-96; *see also Schlup v. Delo*, 513 U.S. 298, 327 (1995). Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). A valid actual innocence claim must be supported by new reliable evidence, such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence, that was not presented at trial that is so strong a court cannot have confidence in the outcome of the petitioner's trial. *Schlup*, 513 U.S. at 324. In other words, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327. I do not address actual innocence here because Mr. Bullock does not argue that he meets the actual-innocence exception.

default; the petitioner must present affirmative evidence or argument as to the precise cause and prejudice produced. *Lundgren*, 440 F.3d at 764 (6th Cir. 2006). A showing of cause for the procedural default requires more than the mere proffer of an excuse. Rather, to establish cause, the petitioner must show that some objective factor external to the defense prevented petitioner's compliance with the state procedural rule. *Murray*, 477 U.S. at 494-95; *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012).

To demonstrate prejudice sufficient to overcome procedural default, a petitioner must show more than errors in the state trial creating a possibility of prejudice; rather, the petitioner must show that the alleged errors worked to the petitioner's actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions. *Murray*, 477 U.S. at 494. There is no prejudice where the petitioner does not show a reasonable probability that the result of the proceeding would have been different. *Ambrose v. Booker*, 801 F.3d 567, 577-78 (6th Cir. 2015).

A finding of cause and prejudice does not entitle a petitioner to habeas relief; it only allows a federal court to consider the merits of a claim that otherwise would have been procedurally defaulted. *See Martinez v. Ryan*, 566 U.S. 1, 10 (2012); *see also Coleman*, 501 U.S. at 750.

Mr. Bullock was sentenced on October 18, 2022. He placed his notice of appeal and motion for leave to file a delayed appeal in the Fifth District in the mail on October 25, 2023, and the Fifth District journalized the filing on November 6, 2023. (ECF #4-1 at PageID 78-79, 88). In his motion, Mr. Bullock alleged that neither the trial court nor his counsel informed him of any right to appeal and he did not become aware of that right until sometime in September 2023 when he first visited the jail's law library to look at options for relief and spoke with an inmate law clerk. (*Id.* at PageID 92). Mr. Bullock did not explain why he waited nearly a year to use the jail's law

library or seek advice from an inmate law clerk. But he did file his notice of appeal and motion for leave to file a delayed appeal within approximately one to two months of learning of the right to appeal. (*Id.*).

District court case law indicates a trial court's failure to advise the petitioner of the right to appeal may establish cause to overlook procedural default if the petitioner shows he was not otherwise aware of the right to appeal and did not delay in filing a notice and motion for leave to file a delayed appeal after learning of the right to do so. *See Feely v. Warden, Chillicothe Corr. Inst.*, No. 2:16-cv-619, 2018 WL 1905644, at *1 n.2 (S.D. Ohio Apr. 23, 2018) (petitioner did not establish cause to excuse procedural default when three months lapsed between the time petitioner learned he could appeal and the time he filed a motion for leave to file a delayed appeal); *Whitson v. Clipper*, No. 1:14-cv-2718, 2015 WL 3905104, at *3 (N.D. Ohio June 25, 2015) (petitioner failed to establish cause for procedural default where he waited approximately three years from the date of judgment to seek a delayed appeal; even if the court's failure to inform the defendant of the right to appeal constitutes cause, petitioner waited another seven months after learning about his right to appeal to file a motion for a delayed appeal); *Medina v. Bracy*, No. 1:17-cv-1884, 2021 WL 925806, at *5-6 (N.D. Ohio Mar. 11, 2021) (holding petitioner, who moved for leave to file a delayed appeal one-and-a-half years after being sentenced, did not establish cause because he failed to provide any information regarding when he discovered he had the right to appeal). Under these circumstances, Mr. Bullock might establish cause for the procedural default because he arguably acted with diligence to file a notice and motion for leave to file a delayed appeal once he became aware of his right to do so.

13

Nevertheless, even if Mr. Bullock establishes both cause and prejudice to overcome procedural default, that finding only entitles him to a review of the merits. Assuming without deciding that Mr. Bullock has overcome the procedural default by establishing both cause and prejudice, I now turn to a review of the merits of his claim.

## II.    Merits Review

Both parties argue the claim under the AEDPA standard of review. Mr. Bullock states the Fifth District's denial of his motion for leave to appeal, when the delay was caused by the trial court's failure to inform him of any right to appeal, was an unreasonable application of clearly established federal precedent under § 2254(d)(1).[4] (ECF #1 at PageID 20; ECF #7 at PageID 246, 251). The State contends there is no clearly established Supreme Court precedent establishing a due process or equal protection right to be informed of the right to appeal a jointly recommended sentence imposed after a defendant pleads guilty. (ECF #4 at PageID 34).

### A.    There is no federal constitutional due process right to appellate review of a sentence after a defendant pleads guilty and receives a jointly recommended sentence.

The starting point for federal habeas review is identifying the clearly established federal law governing the petitioner's claims. *Marshall v. Rodgers,* 569 U.S. 58, 61 (2013). The "clearly established" inquiry is a threshold question; if there is no clearly established federal law governing the claim, a state court's decision cannot be "contrary to" or involved an "unreasonable application" of such law. *See Carey v. Musladin*, 549 U.S. 70, 76 (2006). "Clearly established federal law" is the governing legal principle or principles announced in Supreme Court case law at the

---

[4]    Mr. Bullock does not claim the state court's adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding under § 2254(d)(2).

time the state court renders its decision. *Lockyer,* 538 U.S. at 71-72. In deciding what law is clearly established, federal courts must reasonably apply the rules "squarely established" by the Supreme Court's holdings to the facts of each case. *White v. Woodall,* 572 U.S. 415, 427 (2014). Lower court precedent does not constitute clearly established federal law. *Glebe v. Frost,* 574 U.S. 21 (2014). In addition, lower courts are cautioned against framing Supreme Court precedent at a high level of generality. *Brown v. Davenport,* 596 U.S. 118, 136 (2022) (citing *Lopez v. Smith,* 574 U.S. 1, 6 (2014), and *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004)). "In conducting the 'clearly established' inquiry, lower courts must narrowly construe Supreme Court precedents and, as a consequence, 'clearly established' law 'consist[s] only of something akin to on-point holdings.'" *Pouncy v. Palmer,* 846 F.3d 144, 161 (6th Cir. 2017) (quoting *House v. Hatch,* 527 F.3d 1010, 1015 (10th Cir. 2008)).

It is well-established that there is no constitutional right to an appeal. *Abney v. United States,* 431 U.S 651, 656 (1977). Consequently, there is no Supreme Court precedent establishing a constitutional right to be advised of the right to appeal. But when a state provides the right to appeal, it must "act in accord with the dictates of the Constitution and . . . the Due Process Clause." *Evitts v. Lucey,* 469 U.S. 387, 401 (1985). Mr. Bullock argues the Fifth District violated his due process and equal protection rights by denying his motion for leave to file a delayed appeal despite his explanation that he was never advised of the right to appeal. He builds his claim on the holdings in *Peguero,* *Jacobs,* and *Wolfe.* (ECF #7 at PageID 246, 248). According to Mr. Bullock, these cases establish that a trial court must inform a defendant of his right to appeal after pleading guilty to comport with the notions of due process and equal protection. For the following reasons, those cases do not stand for the proposition that a state court, as a function of due process and

15

equal protection, must inform a defendant of the right to appeal after pleading guilty and receiving a jointly recommended sentence.

### i.     *Pegeuro v. United States*

In *Peguero*, a federal petitioner moved to vacate his sentence under 28 U.S.C. § 2255 (the federal prisoner's counterpart to § 2254) because the trial court did not inform him of his right to appeal as required under Federal Rule of Criminal Procedure 32(a)(2).[5] 526 U.S. at 25. The Supreme Court stated that a violation of the rule alone does not entitle a defendant to relief, reiterating that "a court's failure to give a defendant advice required by the Federal Rules is a sufficient basis for collateral relief only when the defendant is prejudiced by the court's error." *Peguero*, 526 U.S. at 27 (citation omitted). The Supreme Court explained:

> The requirement that the district court inform a defendant of his right to appeal serves important functions. It will often be the case that, as soon as sentence is imposed, the defendant will be taken into custody and transported elsewhere, making it difficult for the defendant to maintain contact with his attorney. The relationship between the defendant and the attorney may also be strained after sentencing, in any event, because of the defendant's disappointment over the outcome of the case or the terms of the sentence. The attorney, moreover, concentrating on other matters, may fail to tell the defendant of the right to appeal, though months later the attorney may think that he in fact gave the advice because it was standard practice to do so. In addition, if the defendant is advised of the right by the judge who imposes sentence, the defendant will realize that the appeal may be taken as of right and without affront to the trial judge, who may later rule upon a motion to modify or reduce the sentence. *See* Fed. Rule Crim. Proc. 35. Advising the defendant of his right at sentencing also gives him a clear opportunity to announce his intention to appeal and request the court clerk to file the notice of appeal, well before the 10-day filing period runs. *See* Rule 32(c)(5) ("If the defendant so requests, the clerk of the court must immediately prepare and file a notice of appeal on behalf of the defendant"); Fed. Rule App. Proc. 4(b) (establishing 10-day period for filing appeal, which may be extended for 30 days by district court for "excusable neglect").

---

[5]     The Federal Rules of Criminal Procedure have since been reorganized. The duty to advise the defendant of the right to appeal the sentence imposed after a guilty plea under former Rule 32(a)(2) is now reflected in Rule 32(j)(1)(B).

*Id.* at 26-27. But because the defendant admitted he knew of his right to appeal when he was sentenced, and thus was not prejudiced, the Court held he was not entitled to relief. *Id.* at 27.

*Peguero*'s holding arises from the trial court's failure to comply with a provision of the Federal Rules of Criminal Procedure, not an interpretation of any constitutional provision or a discussion of the procedural failure grounded in due process or fundamental rights. That alone is enough to defeat the assertion that *Peguero* is clearly established federal precedent under § 2254. *See Early v. Packer*, 537 U.S. 3, 10 (2002). In *Early*, the Supreme Court held the circuit court erred in relying on "nonconstitutional" Supreme Court decisions, *Jenkins v. United States*, 380 U.S. 445 (1965) (*per curiam*), and *United States v. United States Gypsum Co.*, 438 U.S. 422 (1978), to find the state appellate court's determination "contrary to" Supreme Court precedent. 537 U.S. at 10. The *Early* Court reiterated that "[n]either *Jenkins* nor *Gypsum Co.* is relevant to the § 2254(d)(1) determination, since neither case sets forth a rule applicable to state-court proceedings. *Jenkins* and *Gypsum Co.* reversed convictions based on jury instructions given in *federal* prosecutions" and thus involved the exercise of the Supreme Court's supervisory power over federal courts, and "neither opinion purported to interpret any provision of the Constitution." *Id.* (emphasis in original). On those grounds, the Court concluded the circuit court erred in relying on them as clearly established precedent under § 2254. *Id.*

The *Peguero* decision too is an exercise of the Supreme Court's supervisory power over federal courts. The *Peguero* Court did not interpret any provision of the Constitution but considered whether a petitioner is entitled to collateral relief when the federal trial court fails to inform him of his right to appeal, as required under federal procedural rules. *Peguero* is not relevant here because Rule 32(j)(1)(B) (then Rule 32(a)(2)) does not apply to the state courts and

the decision does not interpret or discuss due process under the Constitution. Therefore, Mr. Bullock is wrong in asserting *Peguero* establishes that a *state* trial court violates a criminal defendant's federal constitutional rights to due process and equal protection by not advising the defendant of the right to appeal the sentence after a guilty plea, the defendant was not otherwise aware of that right, and the defendant did not meet the deadline to file a notice of appeal. By logical extension, a state appellate court does not violate those constitutional rights by denying leave to file a delayed appeal despite the trial court not advising the defendant of the right to appeal.

In addition to not applying to the constitutional question presented here, *Peguero* is also distinguishable from Mr. Bullock's situation. In *Peguero*, the petitioner pled guilty without a jointly recommended sentence. In contrast, Mr. Bullock's guilty plea was conditioned on an agreement with the state to jointly recommend the sentence. As addressed more fully below, Ohio law precludes a defendant who pled guilty and received a jointly recommended terms from appealing the sentence so long as the sentence is otherwise authorized by law. *See* Ohio Rev. Code § 2953.08(D)(1).

  **ii.**  *Jacobs v. Mohr*

Next, Mr. Bullock cites *Jacobs,* a Sixth Circuit decision holding "the Constitution is violated if a convicted defendant is denied an appeal 'by reason of his lack of knowledge of his right and the failure of his counsel or the court to advise him of his right to appeal with the aid of counsel.'" 265 F.3d 407, 419 (quoting *Goodwin v. Cardwell,* 432 F.2d 521, 522-23 (6th Cir. 1970)). As a decision from an appellate court (not the Supreme Court), *Jacobs* does not constitute clearly established federal law. *See Glebe v. Frost*, 574 U.S. 21 (2014) (lower-court precedent does not

18

constitute clearly established federal law). Moreover, the genesis of the alleged rule can be traced

back to a Second Circuit decision that, like *Jacobs*, does not constitute clearly established

precedent. In *Goodwin*, the Sixth Circuit stated:

> In *Henderson v. Cardwell, Warden*, 426 F.2d 150 (6th Cir. 1970), the petitioner for a
> writ of habeas corpus contended that he was deprived of the effective assistance of
> counsel because his court-appointed attorney failed to advise him that he was entitled
> to appeal as a matter of right. This Court, speaking through Judge Cecil, remanded
> the case to the District Court for an evidentiary hearing to determine whether
> appellant was denied an appeal by reason of his lack of knowledge of his right and
> the failure of his counsel to advise him of his right to appeal with the aid of counsel,
> citing with approval the majority opinion in *United States ex rel. Smith v. McMann*, 417
> F.2d 648 (2d Cir., en banc), *cert. denied*, 397 U.S. 925.

*Id.* (cleaned up).

In *United States ex rel. Smith v. McMann*, the Second Circuit extended the holding of *Douglas*

*v. California*, 372 U.S. 353 (1963), a Supreme Court case holding that indigent defendants have

the right to counsel on their first appeal, to "impose[] upon the state a duty to warn every person

convicted of crime of his right to appeal and his right to prosecute his appeal without expense to

him by counsel appointed by the state, if he is indigent." 417 F.2d 648, 654 (2d Cir. 1969). Like

the *Jacobs* decision, the Second Circuit decision in *McMann* is not clearly established federal law

because they are not holdings of the Supreme Court.

*Jacobs, Goodwin, Henderson,* and *United States ex rel. Smith v. McMann* are also procedurally

distinguishable from this case. In those matters, the defendants did not enter guilty pleas and

jointly recommend their sentences but were found guilty at trial. *Jacobs*, 265 F.3d at 410; *Goodwin*,

432 F.2d at 522; *Henderson*, 426 F.2d at 151; *United States ex rel. Smith v. McMann*, 417 F.2d at 649.

### iii. *Wolfe v. Randle*

Finally, Mr. Bullock cites *Wolfe,* a district court case where the petitioner, a state prisoner convicted and sentenced after pleading guilty to involuntary manslaughter and aggravated burglary, did not challenge his sentence on direct appeal. 267 F.Supp.2d at 745. After time to appeal expired, he filed a pro se motion for leave to file a delayed appeal asserting he was not informed of the right to appeal and identified several grounds on which he intended to appeal if permitted. *Id.* On habeas review, the district court determined the following:

> [D]ue process is offended when a defendant who pled guilty is kept completely ignorant of his appellate rights. Cf. *Peguero v. U.S.*, 526 U.S. 23, 119 S.Ct. 961, 143 L.Ed.2d 18; *White v. Johnson*, 180 F.3d 648, 652 (5th Cir. 1999). The Supreme Court has addressed the procedural requirements for indigent defendants in the appellate process on several occasions. In *Griffin v. Illinois*, 351 U.S. 12, 18, 76 S.Ct. 585, 100 L.Ed. 891 (1956), the Court held that an indigent defendant is entitled to a transcript in order to pursue an appeal. The Court later held that indigent defendants had a right to counsel on their first appeal, *Douglas v. California*, 372 U.S. 353, 365-57, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), and that all defendants have the right to effective assistance of appellate counsel, *Evitts v. Lucey*, 469 U.S. 387, 393, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). The right of notice is more fundamental than the rights previously guaranteed by the Supreme Court. Precedent therefore dictates that failure to inform an indigent defendant of their appellate rights violates due process. Respondent further notes that a defendant is not necessarily denied a constitutional right when a state court denies a request for a delayed appeal. However, due process rights are implicated when a delayed appeal is the result of a lower court's failure to ensure that an indigent defendant's appellate rights are protected.
>
> * * *
>
> When evaluating a claim for habeas corpus relief, only holdings of the United States Supreme Court may be relied on with authority. *Harris*, 212 F.3d at 944-45. As discussed previously, the Supreme Court has specifically put in place procedural protections to protect indigent defendants, including the right to a transcript, *Griffin*, 351 U.S. 12, 76 S.Ct. 585; the right to appellate counsel, *Douglas*, 372 U.S. 353, 83 S.Ct. 814; and the right to have that counsel provide effective assistance with their appeal, *Evitts*, 469 U.S. 387, 105 S.Ct. 830. The protections set forth by the Supreme Court all assume that the defendant knows of his right to appeal. Because notice is more basic than the rights granted in Supreme Court precedent and is a foundation of Supreme Court case law, precedent mandates that due process is violated when a

defendant is not informed of his right to appeal by the trial court or by his counsel. The Ohio Court of Appeals decision denying Petitioner's claim was therefore an unreasonable application of clearly established Supreme Court precedent.

267 F.Supp.2d at 746-47, 749.

Even if I agreed with *Wolfe's* interpretation that *Peguero, Griffin, Douglas,* and *Evitts* implicitly impose a rule that failing to inform a defendant of the right to appeal violates the defendant's right to due process, those antecedent cases do not become "clearly established federal law" until the Supreme Court announces such a rule. *See Lopez,* 574 U.S. at 7 (holding lower court precedent cannot refine or sharpen a general principle of Supreme Court habeas corpus jurisprudence into a specific legal rule that the Supreme Court has not announced). Another district court in this circuit similarly declined to follow the holding in *Wolfe* because "[w]hile the extension of *Evitts, Douglas,* and *Griffin* to a due process right to notice of state appeal rights would certainly be logical, it is not an extension which is "clearly established" by holding of the United States Supreme Court." *Moss v. Warden, Lebanon Corr. Inst.,* No. 1:09-cv-280, 2010 WL 3703273, at *3 (S.D. Ohio June 7, 2010). Moreover, as with the other cases Mr. Bullock cites, *Wolfe* is distinguishable for the fact that the petitioner did not jointly recommend the sentence imposed as Mr. Bullock did.

In sum, Mr. Bullock has not identified clearly established law from the Supreme Court that holds a state court must, as a matter of federal due process or equal protection, inform a defendant that he has a limited right to appeal after entering a guilty plea and receiving a jointly recommended sentence. That is dispositive of his claim under § 2254(d)(1), requiring that this Court deny the petition as meritless. *See Carey,* 549 U.S. at 76 (a district court need not determine whether a state court's decision was contrary to or an unreasonable application of clearly

21

established law when there is no clearly established law governing the petitioner's constitutional claim).

> **B.** **Mr. Bullock has not shown the trial court violated his federal constitutional right to due process by failing to advise him of the right to appeal under Rule 32(B) of the Ohio Rules of Criminal Procedure.**

Mr. Bullock next suggests the trial court's failure to fulfill the mandatory duty under Rule 32(B) of the Ohio Rules of Criminal Procedure to notify him of his right to appeal following a guilty plea constitutes a violation of federal due process. For several reasons, the state court's failure to advise Mr. Bullock of his right to appeal under Rule 32(B) does not entitle him to federal habeas relief.

First, errors in the application of state law are usually not reviewable in federal habeas corpus. *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citation omitted); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions."). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (6th Cir. 1988).

Court errors grounded in state law may warrant relief in a habeas action only where the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment. *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004); *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988). Fundamental fairness is judged as to whether "the action complained of violates fundamental conceptions of justice which lie at the base of our civil and political institutions, and which define the community's sense of fair play and decency." *Dowling v. United States*, 493 U.S. 342, 352 (1990). The Supreme Court has "defined the category

of infractions that violate fundamental fairness very narrowly." *Id.* As described above, there is no constitutional law that requires a state court, as a function of fundamental fairness, to always inform a defendant who pled guilty and received a jointly recommended sentence of the right to appeal his sentence.

Second, it does not appear the state court was required to inform Mr. Bullock of the right to appeal in the first place. Criminal Rule 32(B)(2) states that a trial court "shall advise the defendant of the defendant's right, *where applicable,* to appeal or to seek leave to appeal the sentence imposed." Ohio R. Crim. P. 32(B)(2) (emphasis added). By the language of the rule itself, Ohio courts are not always required to inform criminal defendants who pled guilty of the statutory right to appeal the sentence. The Supreme Court Ohio holds that "if a jointly recommended sentence imposed by the court is 'authorized by law,' then the sentence 'is not subject to review.'" *State v. Sergent,* 69 N.E.3d 627, 630 (Ohio 2016); *see also* Rev. Code § 2953.08(D)(1) ("A sentence imposed upon a defendant is not subject to review under this section if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge."). Thus, if the sentence is not subject to review, the trial court is not obligated to inform a criminal defendant who pled guilty of the right to appeal the sentence. *See, e.g., Thompson v. Sheets,* 3:07-cv-2423, 2009 WL 2176050, at *2 (N.D. Ohio July 21, 2009); *Holcomb v. Wilson,* No. 3:05-cv-803, 2008 WL 2568303, at *3 (N.D. Ohio June 24, 2008).

In this case, Mr. Bullock entered into a negotiated plea agreement and received the jointly recommended sentence. He contends the sentence is not authorized by law because he was sentenced to allied offenses of similar import and therefore was not precluded from appealing the sentence, triggering the trial court's duty to advise him of his applicable appellate rights. (ECF #7

at PageID 227-28). According to Mr. Bullock, he "was sentenced to involuntary manslaughter and aggravated burglary which occurred at the same time and with one animus. The court merged aggravated robbery with involuntary manslaughter but failed to merge aggravated burglary with the underlying offense of involuntary manslaughter." (*Id.* at PageID 228).

But Mr. Bullock's argument is mistaken. A sentence is authorized by law only if it comports with all mandatory sentencing provisions, including the merger of allied offenses of similar import under Rev. Code § 2941.25(A). *Sergent,* 69 N.E.3d at 632-33 (citation omitted). Ohio courts have held that where the sentencing transcript demonstrates the state and defense counsel agreed that offenses were not allied, the issue of allied offenses is waived or forfeited on appeal and the sentence is authorized by law. *See State v. Black,* 58 N.E.3d 561, 567 (Ohio Ct. App. Feb. 4, 2016) (collecting cases); *see also State v. Heisa,* No. 101877, 2015 WL 3632273, at *5 (Ohio Ct. App. June 11, 2015) ("An agreed-upon sentence may not be appealed if (1) both the defendant and the state agree to the sentence, (2) the trial court imposes the agreed sentence, and (3) the sentence was authorized by law.").

At Mr. Bullock's change of plea and sentencing hearing, the state confirmed the parties' joint representation to the court that they agreed Count Two (aggravated robbery) merged with Count One (involuntary manslaughter) as an allied offense of similar import. (*Id.* at PageID 206). The trial court merged those counts, imposed a 10-to-15-year term of imprisonment for Count One and a 10-year term for Count Three, to be served consecutively. (*Id.*). The record shows the parties specifically agreed which counts merged and which did not, and the trial court imposed a sentence consistent with the parties' jointly recommended sentence. The sentence is therefore authorized by law and not appealable. Noted above, the criminal rule requires a trial court to

inform a defendant who pled guilty of the right to appeal the sentence only when the right is applicable to him. R. Crim. P. 32(B). Here, the right to appeal was not applicable because Ohio law precluded him from appealing the sentence.

### CERTIFICATE OF APPEALABILITY

A habeas petitioner may not appeal the denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability (COA) and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c). "A [COA] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court has determined a petitioner's constitutional claim to lack merit, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong" before receiving a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id*. A showing that the appeal would succeed on the claim is not required to grant a COA. *Miller-El*, 537 U.S. 322, 337 (2003).

Jurists of reason would not find this assessment of the constitutional claim debatable or wrong. Therefore, I recommend the District Court **DENY** Mr. Bullock a COA.

CONCLUSION AND RECOMMENDATION

For these reasons, I recommend the District Court **DISMISS** the petition as without merit and **DENY** a certificate of appealability.

Dated: October 9, 2025

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

Objections, Review, and Appeal

Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).